**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOLEEN SHLOTZHAUER et al.,**

              **Plaintiffs,**

              **v.**

**UNITED STATES OF AMERICA,**

              **Defendant.**

**6:15-cv-84
(GLS/TWD)**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:**<br>Fine, Olin & Anderman, LLP<br>1279 Route 300<br>P.O. Box 1111<br>Newburgh, NY 12551 | MARSHALL P. RICHER, ESQ.<br>LAWRENCE D. LISSAUER,<br>ESQ. |
| **FOR THE DEFENDANT:**<br>HON. GRANT C. JAQUITH<br>United States Attorney<br>James T. Foley U.S. Courthouse<br>445 Broadway, Room 218<br>Albany, NY 12207-2924 | KAREN FOLSTER<br>LESPERANCE<br>Assistant United States Attorney |

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiffs Joleen Shlotzhauer (hereinafter "Shlotzhauer") and Eric

Shlotzhauer (hereinafter "Eric") commenced this action against defendant

United States of America pursuant to the Federal Tort Claims Act (FTCA).[1] (Compl., Dkt. No. 1.) Shlotzhauer alleges that she was injured in a car accident attributable to the negligence of a United States Postal Service (USPS) employee while he was operating a government vehicle within the scope of his employment. (*See generally id.*) Eric alleges that, as a result of this accident involving his wife, he suffered various emotional and financial injuries. (*See id.* at 6-7.) Pending before the court is the government's motion for summary judgment based upon the absence of "serious injury." (Dkt. No. 26.) For the reasons that follow, the government's motion is granted.

## II. Background

### A. Facts[2]

On the evening of December 16, 2011, James Boyles, a USPS employee, was collecting mail in Utica, New York. (Def.'s Statement of

---

[1] *See* 28 U.S.C. §§ 1346(b), 2671-80.

[2] Unless otherwise noted, the facts are undisputed. The government asserts facts in its memorandum of law that are absent from its statement of material facts. This alone is enough for the court to deny its motion. *See* N.D.N.Y. L.R. 7.1(a)(3). However, plaintiffs do not raise this issue and also run afoul of the rules by failing to set forth additional material facts that they contend are in dispute in separately numbered paragraphs in their response to the government's statement of material facts. *See id.* Despite the parties' absentmindedness, the court will consider facts set forth within the parties' memoranda that are supported by specific citations to the record. However, plaintiffs' error is particularly egregious in certain portions of their response papers. (*See, e.g.*, Dkt. No. 32, Attach. 1 at 12-16, 18.) As such, the court declines to scour the voluminous record for evidence to support plaintiffs' assertions. *See Prive v. Johnson*, No. 5:04–CV–1024, 2010 WL 3338810, at *2 & n.2 (N.D.N.Y. Aug. 23, 2010).

Material Facts (SMF) ¶ 1, Dkt. No. 26, Attach. 2.)  It was dark and the roads were wet.  (*Id.* ¶ 2; Dkt. No. 32 ¶ 2.)  After stopping at an intersection, Boyles proceeded to make a right turn.  (Def.'s SMF ¶¶ 3-4.)  As he turned the corner, the USPS vehicle struck Shlotzhauer.  (*Id.* ¶¶ 4-5, 7.)

Emergency responders arrived and observed "[one] female patient sitting upright on the ground under care of bystanders."  (*Id.* ¶¶ 10-11 (internal quotation marks and citation omitted).)  They noted that she had been "struck at a very low rate of speed by a [USPS employee] making a right hand turn at a very low rate of speed."  (*Id.* ¶ 12 (internal quotation marks and citation omitted).)  Shlotzhauer was transported to a hospital for treatment.  (*Id.* ¶ 13.)  A computerized tomography (CT) scan of her abdominal area noted no traumatic abnormalities.  (*Id.* ¶ 14.)  A CT scan of the thoracic spine noted multi-level degenerative disc disease.  (*Id.* ¶ 15.)  A CT scan of her cervical spine showed multi-level degenerative disease, bulging discs, and bone spurs.  (*Id.* ¶¶ 16-17.)

Prior to the accident, body imaging conducted on Shlotzhauer also showed degenerative disc disease.  (*Id.* ¶ 30.)  However, before the accident, plaintiffs contend that this degenerative disc disease affected

3

only the lumbar spine and did not necessitate treatment. (Dkt. No. 32 ¶ 29 (citing Dkt. No. 32, Attach. 10).)

On December 19, 2011, Shlotzhauer's primary care provider, nurse practitioner Carrie Stemmer, ordered additional imaging studies. (Def.'s SMF ¶ 18.) An x-ray of the right shoulder revealed no bone or tissue abnormality; an x-ray of the right hip revealed minimal degenerative changes and no evidence of acute fracture or dislocation; and an x-ray of the lumbar spine showed mild to moderate degenerative change in the lower lumbar spine area and no acute compression fractures. (*Id.* ¶¶ 18-20.) On December 27, 2011, a magnetic resonance imaging (MRI) revealed that Shlotzhauer's right shoulder was normal. (*Id.* ¶ 21.) Additionally, an MRI of her cervical spine showed "advanced degenerative arthritis[,] disc disease," disc herniation, moderate spinal stenosis, and bone spurs. (*Id.* ¶ 22 (internal quotation marks and citation omitted); Dkt. No. 26, Attach. 9 at 2.) NP Stemmer found these results "consistent with advanced degenerative arthritic change." (Dkt. No. 26, Attach. 9 at 2.)

Two days later, Shlotzhauer was treated at a medical center for complaints of light-headedness, dizziness, and blurred vision. (Def.'s SMF ¶ 23.) A head CT scan, blood work, and an electrocardiogram

(EKG) all showed normal results. (*Id.* ¶¶ 23-24.) Shlotzhauer was diagnosed with thoracic strain and hypertension. (*Id.* ¶ 25.) Dr. Patrick Costello later recorded a normal brain MRI, perfect vision in both eyes, and his impression of transient vision loss. (*Id.* ¶ 27; Dkt. No. 32 ¶ 27.) A subsequent eye examination revealed that Shlotzhauer had "normal, healthy" eyes. (Def.'s SMF ¶ 28.)

On November 6, 2016, Dr. William Montgomery reviewed all of these medical records and conducted an independent medical examination of Shlotzhauer.[3] (Dkt. No. 26, Attach. 14.) He found that "with the exception of the scapular dyskinesis, which could cause some shoulder pain . . . [t]here is no other objective data to corroborate her bodily pain." (*Id.* at 6.)

## B. Procedural History

Plaintiffs commenced this action on January 23, 2015, alleging an

---

[3] Plaintiffs rely on New York procedural rules to argue that the court should not consider the unsworn declaration of Dr. Montgomery. (Dkt. No. 32, Attach. 1 at 7 (citing *Marsh v. Wolfson*, 186 A.D.2d 115, 116 (2d Dep't 1992)).) However, plaintiffs "overlook[] the fact that this action has been brought in Federal Court, and thus, federal procedural and evidentiary law apply here." *Williams v. Elzy*, No. 00 Civ. 5382, 2003 WL 22208349, at *5 (S.D.N.Y. Sept. 23, 2003). In this District, "[d]espite the potential inappropriateness of submitting the unsworn report of a party's own expert to support . . . a summary judgment motion, such a defect is . . . curable through the submission of an affidavit or a declaration verifying the report's contents." *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, Civ. Action No. 5:01–CV–1974, 2007 WL 4349135, at *19 (N.D.N.Y. Jan. 31, 2007) (collecting cases). Here, the government provides a sworn declaration by Dr. Montgomery verifying the contents of his report. (Dkt. No. 35, Attach. 3.) As such, the court is confident that the evidence would be admissible at trial and is properly considered at this stage.

5

FTCA claim based upon the government's negligence and seeking damages of $3,300,000. (*See generally* Compl.) Following discovery, the government moved for summary judgment. (Dkt. No. 26.)

### III. Standard of Review

The standard of review pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

Under the FTCA, the government's liability is determined according to the law of the state where the incident giving rise to the claim occurred. *Goodkin v. United States*, 773 F.2d 19, 21 (2d Cir. 1985). As applicable here, New York's "No-Fault" Law precludes recovery of non-economic loss resulting from the negligent operation of a motor vehicle "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). "Serious injury" includes, among other things,

> personal injury which results in . . . permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member;

6

> significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

*Id.* § 5102(d). To prevail on a summary judgment motion, a defendant claiming that a plaintiff did not suffer a serious injury must present competent medical evidence that the plaintiff's injuries were not caused by the car accident at issue, *see Ostroll v. Nargizian*, 97 A.D.3d 1076, 1077 (3d Dep't 2012), or that the injuries do not meet the definition for "serious injury" as set forth in § 5102(d), *see Henry v. Rivera*, 34 A.D.3d 352, 353 (1st Dep't 2006); *Seminara v. Grossman*, 253 A.D.2d 420, 421 (2d Dep't 1998). Thereafter, the burden shifts to the plaintiff "to proffer medical evidence that contain[s] objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing [the plaintiff's] present limitations to the normal function, purpose[,] and use of the affected body organ, member, function[,] or system." *Ostroll*, 97 A.D.3d at 1077 (internal quotation marks and citations omitted). Additionally, if the defendant presents evidence of preexisting injuries, the plaintiff must present evidence addressing the claimed lack of causation.

7

*See id.*

After identifying multiple potentially-applicable definitions of serious injury, the government claims that Shlotzhauer cannot meet any of them. (Dkt. No. 26, Attach. 1 at 10-12.) Based on the independent medical assessment of Dr. Montgomery, the government contends that "[Shlotzhauer]'s complaints of pain are not corroborated by an[y] objective medical findings and that any abnormalities in her imaging studies reflect pre-existing degenerative changes." (*Id.* at 9 (citing Dkt. No. 26, Attach. 14).) Plaintiffs argue that the government has not met its initial burden of demonstrating a lack of serious injury. (Dkt. No. 32, Attach. 1 at 5.) Specifically, plaintiffs contend that "Dr. Montgomery's opinion is baseless without any medical documentation to support his conclusion that . . . Shlotzhauer's injuries were pre-existing . . . [and] because, having determined that the conditions were pre-existing, he failed to address whether they were aggravated or exacerbated by the accident[.]" (*Id.* at 9.) Instead of providing their own expert opinion to the contrary, plaintiffs contend that medical records show that Shlotzhauer suffered serious injury from the accident. (*Id.* at 11-18.)

A careful review of the record evidence demonstrates that the

8

government has established that Shlotzhauer's conditions preexisted the subject accident, and her subjective assessments of injury to her neck, lumbar spine, hip, shoulder, or vision are not enough to classify her injury as serious within the meaning of New York's no-fault statute. (Dkt. No. 26, Attach. 1 at 8-9.)

After examining all of the above-mentioned medical evidence, (Dkt. No. 26, Attach. 14 at 1-2), Dr. Montgomery found that the only objective data to corroborate the bodily pain Shlotzhauer complained of was the scapular dyskinesis diagnosis, "which could cause some shoulder pain," (*id.* at 6). However, Dr. Montgomery opined that Shlotzhauer's shoulder condition was normal for a woman her age, and that "it [wa]s questionable whether the MRI findings [in her shoulder] occured during the [accident]." (*Id.* at 5.) Instead, he found that there was "some symptom magnification" and "her pain does seem out of proportion to what would be expected in the absence of imaging findings or with very limited findings on such objective studies such as MRIs and x-rays." (*Id.* at 3, 6.) He also found that image studies showing disc herniations in the lumbar and cervical spine indicated conditions that are degenerative in nature, which were consistent both before and after the accident. (*Id.* at 3-4.) As for

9

Schlotzhauer's neck pain, Dr. Montgomery found "there is nothing in the . . . medical findings to explain her reported pain." (*Id.* at 5.) Although Dr. Montgomery noted the lumber spine imaging that showed "some slightly increased disc degeneration" after the accident, he concluded that "there has not been a significant radiologic change to corroborate or explain the symptoms she claims." (*Id.* at 5-6.) Additionally, Dr. Montgomery explained that there was "no stenosis in the lumbar spine to explain [her hip pain] and no visible bony injury." (*Id.* at 6.)

"[W]hether a limitation of use or function is significant or consequential . . . relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose[,] and use of the body part." *Toure v. Avis Rent A Car Sys.*, 98 N.Y.2d 345, 353 (2002) (footnote, internal quotation marks, and citation omitted). To establish a serious injury based on a significant limitation of use of a body function or system, Shlotzhauer must prove that she suffered from "something more than a . . . minor, mild[,] or slight limitation of use." *Licari v. Elliott*, 455 N.Y.S.2d 570, 573 (1982). The significance of the limitation must be supported by credible medical evidence and must be objectively measured and quantified. *See*

*Lanuto v Constantine*, 192 A.D.2d 989, 991 (3d Dep't 1993). Subjective complaints of pain, unsupported by credible medical evidence, cannot form the basis of a significant limitation. *See Scheer v. Koubek*, 70 N.Y.2d 678, 679 (1987). Moreover, conclusory claims of causation by physicians are not sufficient to rebut detailed findings of degenerative changes. *See Henchy v. VAS Express Corp.*, 115 A.D.3d 478, 479 (1st Dep't 2014). Here, although Shlotzhauer had *some* pain caused by scapular dyskinesis in her shoulder, it was not something more than the normal shoulder condition for a person her age. (Dkt. No. 26, Attach. 14 at 5.) As for Shlotzhauer's other complaints of pain, there is credible evidence that her injury was either non-existent or degenerative in nature. (*Id.* at 3-6.)

Furthermore, the evidence does not demonstrate that Shlotzhauer suffered a "a medically determined injury or impairment of a non-permanent nature which prevents [her] from performing substantially all of the material acts which constitute [her] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. Law § 5102(d). "Substantially all" is "construed to mean that the

person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment." *Licari*, 455 N.Y.S.2d at 573. Given the lack of objective medical evidence indicating that Shlotzhauer was more than slightly curtailed from performing her daily activities as a result of injuries sustained in the accident, and for the reasons stated by the government, (Dkt. No. 26, Attach. 1 at 11-12), Shlotzhauer fails to meet this definition of "serious injury." As such, the government met its initial burden of showing a lack of serious injury and that the source of the pain experienced by Shlotzhauer was pre-existing. *See Ostroll*, 97 A.D.3d at 1077; *Henry*, 34 A.D.3d at 353; *Seminara*, 253 A.D.2d at 421.

Plaintiffs' reliance on Dr. Connolly's report to rebut Dr. Montgomery's expert opinion is misplaced. After reviewing Dr. Connolly's report, no reasonable person could conclude that he "opined that [Shlotzhauer's] neck, back[,] and bilateral shoulder pain was caused by the motor vehicle accident." (*Compare* Dkt. No. 32, Attach. 1 at 15, *with* Dkt. No. 32, Attach. 13 at 5.) In fact, Dr. Connolly supported Dr. Montgomery's findings: he found "no spinal deformity"; "pre-existing multilevel degeneration of the cervical spine"; and "signs of symptom magnification and chronic pain behavior, which are unfortunate and typically relate to a

12

delay in recovery." (Dkt. No. 32, Attach. 13.) Notably, Dr. Connolly also concluded that, despite "pre-existing conditions that contribute substantially to the delay in her recovery," Shlotzhauer was "capable of employment [in her former position]." (*Id.* at 5.)

Plaintiffs attempt to characterize the record medical evidence as demonstrating a decreased range of motion and continued course of treatment following the accident that is indicative of a serious injury. (Dkt. No. 32, Attach. 1 at 9-18.) However, plaintiffs fail to provide specific citations for many of their factual assertions, as discussed above, and do not present objective evidence demonstrating that any injury Shlotzhauer suffered was either serious or not the result of pre-existing disc degeneration. *See Ostroll*, 97 A.D.3d at 1077. Even if the plaintiffs' factual assertions were properly supported, their claims fail for the reasons stated by the government. (Dkt. No. 35 at 4-6.) Accordingly, the government's motion is granted.[4]

---

[4] Although the analysis above relates only to plaintiffs' claims for non-economic damages, plaintiffs' claims that Shlotzhauer suffered economic loss in excess of basic economic loss are also dismissed for the reasons stated by the government. (Dkt. No. 35 at 6-7.) Not only did plaintiffs fail to offer any expert medical testimony or objective medical evidence demonstrating their entitlement to such relief, but they filed medical evidence that demonstrated that Shlotzhauer was able to continue her employment after the accident. (Dkt. No. 32, Attach. 13 at 5.) Additionally, given that all of Shlotzhauer's claims are dimissed, Eric's derivative claims do not survive. *See Rosse v. United States*, 110 F. Supp. 3d 415, 428-29 (N.D.N.Y. 2015).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for summary judgment (Dkt. No. 26) is **GRANTED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 16, 2018
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge